Case No. _____ Document 1 Filed 12/1/25

# UNITED STATES DISTRICT COURT

# FOR THE MIDDLE DISTRICT OF FLORIDA

# TAMPA DIVISION

|  |  |
|---|---|
| DEVON DWAYNE JONES, an individual, )<br>                    Plaintiff, )<br>  )<br>v.  )<br>  )<br>EXPERIAN INFORMATION SOLUTIONS, INC. )<br>SANTANDER CONSUMER USA INC. )<br>AUSTIN CAPITAL BANK SSB. )<br>                    Defendants. )<br>  ) | Civil Action No. 8:25-cv-3384-TPB-AEP<br>(to be assigned by Clerk) |

DEC 11 2025 PM 1:07
FILED - USDC - FLMD - TPA

## PLAINTIFF'S COMPLAINT

## FOR DAMAGES, INJUNCTIVE RELIEF, AND OTHER RELIEF FOR VIOLATIONS OF THE

## FAIR CREDIT REPORTING ACT - 15 U.S.C. §§ 1681e(b), 1681i, 1681s-2(b)

1. This is a consumer protection action brought by Devon Dwayne Jones ("Plaintiff"), a natural person and resident of Hillsborough County, Florida. Plaintiff seeks actual, statutory, and punitive damages, together with declaratory and injunctive relief, against Experian Information Solutions, Inc. ("Experian"), Santander Consumer USA Inc. ("Santander"), and Austin Capital Bank SSB ("Austin Capital") for violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681e(b), 1681i, and 1681s-2, related to the reporting and reinvestigation of two consumer tradelines on Plaintiff's Experian credit report.

2. In October 2024, Plaintiff's vehicle, financed through Santander, was declared a total loss. Plaintiff's insurer (Progressive) paid $17,033.66 on February 13, 2025, directly to Santander on the loan. Santander's own records and subsequent letter to Plaintiff acknowledge that this payment reduced the



principal balance to $6,931.02. Notwithstanding this admission, Experian continues to report a charged-off balance of roughly $9,000, and both Experian and Santander fail to note that the tradeline is disputed or that insurance proceeds were applied.

3. Plaintiff also had a credit-builder account with Austin Capital. Experian reports late payment data on that account. Plaintiff disputes the accuracy of those lates, explaining that the alleged delinquency was due to an auto-pay failure, not non-payment; Plaintiff repeatedly asked Austin Capital and Experian to correct the payment history or remove the tradeline. Yet Experian verified the negative information without adding a dispute notation, and Austin Capital failed to investigate or correct its reporting.

4. Plaintiff has disputed both tradelines multiple times with Experian and directly with the furnishers. Experian continues to verify the accounts and fails to mark either account as "disputed by consumer." Santander and Austin Capital likewise continue to furnish information to Experian without indicating that Plaintiff disputes the accounts, despite receiving written notice of the disputes.

5. Experian's and the furnishers' willful or negligent noncompliance with the FCRA has caused Plaintiff credit denials, higher insurance rates, and significant emotional distress. Plaintiff estimates spending over 80 hours documenting disputes and monitoring his credit. Plaintiff brings this action to require Defendants to correct or delete the inaccurate information and to recover damages under the FCRA.

## JURISDICTION AND VENUE

6. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 and 15 U.S.C. § 1681p because the claims arise under federal law.

7. Venue is proper in this District under 28 U.S.C. § 1391(b) and 15 U.S.C. § 1681p. Plaintiff resides in Hillsborough County, Florida; Experian and Santander conduct business in Florida; and a substantial part of the events giving rise to the claims occurred in this District.

### PLAINTIFF

8. Plaintiff Devon Dwayne Jones is a natural person and "consumer" as defined by 15 U.S.C. § 1681a(c). Plaintiff currently lives at 5432 Rainwood Meadows Dr, Apollo Beach, Florida 33572, and has previously resided at 36178 Jenny Lynne Cir, Zephyrhills, Florida 33541.

### DEFENDANT CONSUMER REPORTING AGENCIES

9. **Experian Information Solutions, Inc.** is a consumer reporting agency ("CRA") as defined by 15 U.S.C. § 1681a(f). Experian collects and disseminates consumer credit data for monetary fees and maintains consumer files that appear on credit reports used by lenders, insurers, landlords, and employers.

10. **Santander Consumer USA Inc.** is a furnisher of information to consumer reporting agencies. Santander extends and services auto-finance credit and furnishes data about consumers' auto loans to Experian and other CRAs.

11. **Austin Capital Bank SSB** is also a furnisher of information to consumer reporting agencies. Austin Capital extends credit-builder accounts and furnishes data about consumers' payment history to Experian and other CRAs.

### FACTUAL ALLEGATIONS

#### A. The Santander Auto-Loan Tradeline

12. Plaintiff opened an auto loan with Santander around 2019 to finance a 2014 BMW X6. The loan was for personal, family, and household purposes.

13. On or about October 26, 2024, Plaintiff's vehicle was declared a total loss following a collision. According to Santander's CFPB response letter, as of that date, the outstanding principal balance was $23,964.68. Progressive Insurance (Plaintiff's insurer) issued a total-loss payment of $17,033.66 to Santander via lienholder portal on February 13, 2025, reducing the principal balance to $6,931.02. A true and correct copy of Progressive's total-loss payout record showing the $17,033.66 lienholder payment is attached as Exhibit A. Santander confirms these figures in its June 2, 2025 response letter to Plaintiff, a true and correct copy of which is attached as Exhibit B.

14. Plaintiff purchased Guaranteed Asset Protection (GAP) coverage; Santander indicates it filed a GAP claim but had not yet received GAP proceeds.

15. Santander's letter acknowledges the insurance payment and the corrected balance; however, Plaintiff never received any monthly statements, deficiency notices, or updated balance letters after the total-loss payment.

16. Experian's credit report continues to list the Santander tradeline as a charged-off account with a balance of approximately $9,000 and a status of "open/past due" (as reflected in the 3-bureau report). Neither Experian nor Santander has updated the tradeline to reflect the $17,033.66 insurance settlement or the lower balance of $6,931.02. Plaintiff's November 24, 2025 three-bureau credit report demonstrates this inaccurate reporting and the absence of any dispute notation; a true and correct copy is attached as Exhibit C.

17. Plaintiff disputed the Santander tradeline with Experian multiple times, providing copies of the insurance payment and demanding that Experian verify the debt with competent evidence. Plaintiff also disputed the tradeline directly with Santander, asking it to correct the balance and add a "disputed by consumer" notation. A true and correct copy of one of Plaintiff's written disputes to Experian regarding the Santander tradeline is attached as Exhibit E.

18. In response to at least one dispute, Santander admitted in writing that the correct balance after the insurance payment was $6,931.02. Nevertheless, Santander continues to furnish to Experian an inflated balance and fails to include any notation that the debt is disputed. Plaintiff also submitted a

detailed complaint to the Consumer Financial Protection Bureau describing Santander's failure to update the balance after the insurance payment, a true and correct copy of which is attached as Exhibit D.

19. Experian repeatedly "verified" the Santander tradeline as accurate. Plaintiff contends Experian's reinvestigation did not involve review of the insurer's payment documentation and did not require Santander to produce any original records.

20. Experian continues to report the Santander tradeline without the required "disputed by consumer" notation, and with an inflated balance.

21. The misreporting has caused Plaintiff tangible harm: he has been denied new credit cards and working-capital loans, his auto insurance premiums have increased, and he has been forced to rely on cash. Plaintiff has spent over 80 hours on disputes and has suffered stress, sleeplessness, and anxiety.

**B. The Austin Capital Credit-Builder Tradeline**

22. Plaintiff also opened a credit-builder account with Austin Capital Bank (account ending in 8A37223003). Experian reports late payment data on this tradeline.

23. Plaintiff asserts that the late payment(s) reported are inaccurate. The alleged delinquency resulted from an auto-pay failure rather than missed payments. Plaintiff promptly cured the issue and requested that Austin Capital and Experian correct the payment history and remove any derogatory marks.

24. Plaintiff disputed the Austin Capital tradeline with Experian and provided affidavits stating that the payment history was inaccurate. He demanded that Experian obtain original payment records from Austin Capital rather than rely on automated data. A true and correct copy of Plaintiff's written dispute and affidavit to Experian regarding the Austin Capital tradeline is attached as Exhibit F.

25. Plaintiff also disputed the account directly with Austin Capital. Austin Capital did not acknowledge any error; instead, it maintained the late payment reporting and refused to update the account as "disputed by consumer."

26. Experian verified the Austin Capital tradeline as accurate and did not include a dispute notation. Plaintiff contends Experian failed to forward all relevant information to Austin Capital and did not require Austin Capital to provide documentary proof.

### C. Failure to Mark Accounts as Disputed (Saunders; Gorman; Seamans)

27. Plaintiff has disputed the Santander and Austin Capital tradelines multiple times. Despite being notified, Experian has not appended any "consumer disputes this account" notation to either tradeline. As shown on Exhibit C, Experian's tradelines for the Santander and Austin Capital accounts do not reflect any 'disputed by consumer' notation.

28. Similarly, Santander and Austin Capital continued to furnish information to Experian without indicating that the debts were disputed.

29. The omission of a dispute notation renders Defendants' credit reporting materially misleading. Courts have repeatedly held that failing to report a known, unresolved consumer dispute can itself be an inaccuracy under the FCRA. See, e.g., Saunders v. Branch Banking & Tr. Co. of Va., 526 F.3d 142, 148-50 (4th Cir. 2008) (holding that a furnisher's failure to report a debt as disputed created a materially misleading impression and violated § 1681s-2(b), supporting statutory and punitive damages); Gorman v. Wolpoff & Abramson, LLP, 584 F.3d 1147, 1163-64 (9th Cir. 2009) (recognizing a private claim under § 1681s-2(b) where the furnisher failed to advise CRAs that an account remained disputed); Seamans v. Temple Univ., 744 F.3d 853, 865-66 (3d Cir. 2014) (same, holding that failure to note a dispute may render otherwise accurate information misleading and actionable)

### CAUSES OF ACTION

**Count I: Violation of 15 U.S.C. § 1681e(b): Failure to Assure Maximum Possible Accuracy (Against Experian)**

30. Plaintiff re-alleges paragraphs 1-29.

31. Section 1681e(b) requires consumer reporting agencies to follow reasonable procedures to assure maximum possible accuracy of the information they report.

32. Experian prepared consumer reports regarding Plaintiff that contained material inaccuracies: (a) an overstated balance on the Santander loan and omission of the insurance settlement; (b) inaccurate late-payment history on the Austin Capital account; and (c) omission of the dispute notation.

33. Experian failed to employ reasonable procedures to ensure accuracy, including failing to require Santander to provide documentation of the loan balance and failing to obtain original payment records from Austin Capital.

34. Experian's conduct violated § 1681e(b). Experian acted willfully and recklessly, entitling Plaintiff to statutory and punitive damages under § 1681n, or negligently, entitling Plaintiff to actual damages under § 1681o.

34A. The Eleventh Circuit has explained that a § 1681e(b) claim requires a consumer to show that (1) the CRA prepared a report containing inaccurate or misleading information, (2) the inaccuracy resulted from the CRA's failure to follow reasonable procedures to assure maximum possible accuracy, and (3) the consumer suffered damages. Cahlin v. Gen. Motors Acceptance Corp., 936 F.2d 1151, 1156-60 (11th Cir. 1991). Experian's reporting of an inflated balance, omission of the $17,033.66 insurance payoff, and failure to add a dispute notation satisfy these elements at the pleading stage.

34B. The Eleventh Circuit has also emphasized that information can be "inaccurate" under the FCRA when it is technically correct but materially misleading to users of a report. See, e.g., Felts v. Wells Fargo Bank, N.A., 893 F.3d 1305, 1312-13, 1318 (11th Cir. 2018) (explaining that a furnisher may be liable where the reporting, viewed objectively, creates a misleading impression). Experian's reporting of a charged-off balance of roughly $9,000, without any note of the insurance payout or dispute, is materially misleading in exactly this way

**Count II: Violation of 15 U.S.C. § 1681i: Failure to Conduct a Reasonable Reinvestigation (Against Experian)**

35. Plaintiff re-alleges paragraphs 1-29.

36. Section 1681i(a) requires CRAs to conduct a reasonable reinvestigation of disputed information and to promptly delete or modify any information that cannot be verified. Section 1681i(a)(2) requires CRAs to provide the furnisher with all relevant information from the consumer.

37. Plaintiff filed multiple disputes with Experian regarding the Santander and Austin Capital tradelines. Copies of Plaintiff's dispute letters and notices are attached collectively as Exhibits E through G. He provided documentation showing the insurance payout, the correct balance of $6,931.02, and affidavits challenging the late-payment history.

38. Experian failed to conduct a reasonable reinvestigation. It relied on automated verifications and did not require Santander or Austin Capital to supply original documents. Experian failed to forward all relevant information to the furnishers and failed to modify or delete inaccurate data.

39. Experian's actions constituted willful and/or negligent violations of § 1681i, entitling Plaintiff to damages under §§ 1681n and 1681o.

39A. Section 1681i(a) requires a "reasonable reinvestigation" of disputed information. The Eleventh Circuit has held that whether a CRA's reinvestigation procedures are reasonable is typically a jury question, and has vacated summary judgment for Experian where the record created a genuine dispute on that issue. See Losch v. Experian Info. Sols., Inc., 995 F.3d 937, 944-46 (11th Cir. 2021) (holding that a jury could find Experian's procedures unreasonable in handling a mortgage tradeline dispute).

39B. Other courts have likewise rejected the notion that a CRA may simply "parrot" a furnisher's response or limit its review to automated records when a consumer provides specific evidence of inaccuracy. See Cushman v. Trans Union Corp., 115 F.3d 220, 223-26 (3d Cir. 1997) (holding that a CRA's reinvestigation must do more than confirm information with the original source and that whether the reinvestigation is reasonable is for the jury). Experian's decision to repeatedly verify Plaintiff's Santander and Austin Capital tradelines without obtaining or reviewing the insurer's payment documentation, Austin Capital's underlying payment records, or other original source material falls squarely within the type of unreasonable reinvestigation these cases condemn.

**Count III: Violation of 15 U.S.C. § 1681s-2(b): Furnisher Duties After Notice of Dispute (Against Santander and Austin Capital)**

40. Plaintiff re-alleges paragraphs 1-29.

41. Upon receiving notice of Plaintiff's disputes from Experian, Santander, and Austin Capital were required by § 1681s-2(b) to (a) conduct an investigation, (b) review all relevant information provided by Experian, (c) report the results to Experian, and (d) modify or delete any inaccurate information. Experian's transmission of these disputes and notices to Santander and Austin Capital is reflected in the correspondence attached as Exhibits E through G.

42. Santander admitted that Plaintiff's account balance was $6,931.02 after the insurance payment, yet continued to furnish an inflated balance and omitted the insurance settlement from the tradeline. Santander failed to mark the account as disputed.

43. Austin Capital failed to conduct a reasonable investigation into Plaintiff's dispute of the alleged late payment(s), did not review Plaintiff's affidavits or obtain underlying payment records, and continued to furnish the derogatory data without a dispute notation.

44. Both furnishers' conduct constituted willful and/or negligent violations of § 1681s-2(b), entitling Plaintiff to damages under §§ 1681n and 1681o.

44A. Courts have likewise held that furnishers who receive notice of a dispute from a CRA must conduct a reasonable investigation and may be liable under § 1681s-2(b) when they fail to correct inaccurate or misleading information, including by omitting dispute language. See *Gorman*, 584 F.3d at 1157-59, 1163-64 (holding that § 1681s-2(b) requires furnishers to conduct a reasonable investigation and that failing to report that a charge remains disputed can violate the statute); *Hinkle v. Midland Credit Mgmt., Inc.*, 827 F.3d 1295, 1303-07 (11th Cir. 2016) (reversing summary judgment where a jury could find the furnisher's investigation unreasonable because it merely compared data in its own system without obtaining underlying account-level documents); *Saunders*, 526 F.3d at 148-50 (upholding liability and $80,000 in punitive damages against a furnisher that continued to report a debt without noting the consumer's ongoing dispute); *Seamans*, 744 F.3d at 865-66 (recognizing a private right of action under § 1681s-2(b) for a furnisher's failure to mark an account as disputed). Santander's and Austin Capital's refusal to correct the balance, acknowledge the $17,033.66 insurance payment, or mark the accounts as disputed despite repeated notices mirrors the conduct found actionable in these cases.

## DAMAGES

45. As a result of Defendants' violations, Plaintiff has suffered actual damages, including loss of credit opportunities, higher insurance premiums, emotional distress, inconvenience, and out-of-pocket expenses. Plaintiff has spent over 80 hours drafting disputes, gathering documentation, and monitoring his credit.

46. Defendants' actions were willful, and Plaintiff seeks statutory damages of $100-$1,000 per defendant, punitive damages, actual damages, attorney's fees, and costs.

46A. Willful violations of the FCRA include not only knowing misconduct but also actions taken in reckless disregard of statutory duties. *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 56-60, 68-70 (2007) (holding that an "objectively unreasonable" reading of the FCRA that creates an unjustifiably high risk of harm qualifies as willful). Experian, Santander, and Austin Capital adopted and persisted in interpretations of their obligations under §§ 1681e(b), 1681i, and 1681s-2(b) that are objectively unreasonable in light of the statutory text and the case law cited above, supporting an award of statutory and punitive damages.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff respectfully requests that the Court enter judgment in his favor and against Defendants, jointly and severally where permitted, and award the following:

1. Actual damages to be determined at trial under 15 U.S.C. §§ 1681n and 1681o;

2. Statutory damages of not less than $100 and not more than $1,000 per defendant for willful violations under 15 U.S.C. § 1681n(a)(1);

3. Punitive damages under 15 U.S.C. § 1681n(a)(2);

4. Reasonable attorney's fees and costs under 15 U.S.C. §§ 1681n and 1681o;

5. Preliminary and permanent injunctive relief requiring Experian to correct or delete the inaccurate tradelines and to add a "disputed by consumer" notation, requiring Santander and Austin Capital to furnish accurate information and mark the accounts as disputed, and requiring deletion of the tradelines if they cannot be verified;

6. Declaratory relief that Defendants' conduct violated the FCRA; and

7. Any other relief the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

DATED: December 1st, 2025

## RESPECTFULLY SUBMITTED

Pro Se

**Devon Dwayne Jones**
Plaintiff, Pro Se
5432 Rainwood Meadows Dr
Apollo Beach, FL 33572
727-657-0186
Devon_Jones89@yahoo.com

Case No. _____ Document 1 Filed 12/1/25

**EXHIBIT LIST**

The following exhibits are attached and incorporated by reference into this Complaint:

- **Exhibit A**: Progressive Insurance "Payout Information" screen for total-loss claim on 2014 BMW X6, showing $17,033.66 lienholder payment on February 13, 2025.

- **Exhibit B**: Santander Consumer USA letter to Plaintiff dated June 2, 2025 (CFPB Case No. 250520-20936248), acknowledging the October 26, 2024 total loss, the $23,964.68 principal balance, the $17,033.66 insurance payment, and the remaining balance of $6,931.02, and referencing the pending GAP claim.

- **Exhibit C**: MyFreeScoreNow 3-Bureau Credit Report & Scores for Plaintiff (report date November 24, 2025), showing the Experian tradelines for Santander and Austin Capital with inflated balance/late-payment data and no "disputed by consumer" notation, and showing removal of the Santander account from Equifax and TransUnion.

- **Exhibit D**: CFPB "Complaint Detail" submission by Plaintiff regarding Santander (submitted May 20, 2025), describing Santander's failure to update the balance after the insurance settlement, inaccurate charge-off and re-aging conduct, and Plaintiff's requested relief.

- **Exhibit E**: Plaintiff's written Experian dispute/affidavit regarding the Santander tradeline, challenging the charged-off balance, payment history, and failure to mark the account as disputed.

- **Exhibit F**: Plaintiff's written Experian dispute/affidavit regarding the Austin Capital tradeline, challenging the accuracy of the reported late-payment history and demanding verification with original payment records.

- **Exhibit G**: Plaintiff's "Final Legal Notice – Late Payment Removal" letter to Experian dated July 30, 2025, demanding full verification or removal of the reported late payment on the Austin Capital account.